UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| BARBARA LIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:07-cv-098 |
| ) | JURY DEMANDED |
| MENU FOODS INCOME FUND, ) | CLASS ACTION |
| ) | |
| Defendant. ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

1. Plaintiffs, individually and as representatives of a class of similarly situated individuals, purchased affected and/or contaminated brands of pet food manufactured by the defendant which caused plaintiffs' pets to suffer kidney damage, kidney failure, and/or other injuries and death, after ingesting such pet food.

2. The Defendant, Menu Foods Income Fund [Menu Foods] is a Canadian company doing business in the United States. Menu Foods owns pet food manufacturing facilities in the states of Kansas and New Jersey. The defendant's principal place of business within the United States is located at 9130 Griffith Morgan Lane, Pennsauken, NJ, 08110. The defendant sells its pet food under various brands across the United States, including Tennessee.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, and has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1867.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a part or substantial part

1

of the events or omissions giving rise to the claim occurred in this judicial district, or a substantial part of the property that is the subject of the action is situated in this judicial district.

5. Further, the incidents complained of took place within the Eastern District of Tennessee. Therefore, personal jurisdiction and venue is proper in this Court.

## FACTS

6. From approximately December 3, 2006 to March 6, 2007, Defendant sold affected and/or contaminated pet food to various chain stores, including, but not limited to, Kroger Co., Wal-Mart Stores Inc., Safeway Inc., PetSmart Inc., as well as other stores. Plaintiffs purchased Defendant's product, and such product was ingested by plaintiffs' pets. Subsequently, various reports and/or complaints from such individuals stated that pets suffered symptoms indicative of kidney damage and/or failure. On or around March 16, 2007 the Defendant formally recalled approximately 60 million cans of such pet food, and the United States Food and Drug Administration issued a press release the same day regarding the recall.

7. On or about March 23, 2007, researchers at Cornell University's College of Veterinary Medicine and the New York State Department of Agriculture reported that tests conducted on the recalled foods produced by the defendant revealed the presence of toxic levels of Aminopterin. Aminopterin is a chemical commonly used as a rodenticide outside the United States. The United States has not approved the use of aminopterin as a rodenticide.

8. Defendant's business is manufacturing, producing, distributing, and selling cat food products under various brands or labels, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus, Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams,

Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet, Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie, as well as others.

9. Defendant's business is also manufacturing, producing, distributing, or selling dog food products under various brands or labels, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion, Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max, Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride—Good & Meaty, President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot, Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn Dixie, and Your Pet.

10. Defendant's products were placed in the stream of commerce and distributed and offered for sale to Plaintiffs in Tennessee and elsewhere in the United States. Defendant manufactures and distributes hundreds of millions of packets of pet food in the United States annually. The contamination of defendant's pet food resulted in a nationwide recall of defendant's product affecting approximately sixty million (60,000,000) packets of pet food across the United States.

## CLASS ACTION

11. This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure, Rule 23.

12. Plaintiffs, Barbara Light, Peggy Martin, Janis Crawford, and Vickie Williams, bring this class action individually and on behalf of all others similarly situated, as members of the following proposed class:

> **All persons who own pets, and whose pets were *made ill, injured and/or died* as a result of ingesting Defendant's pet food.**

13. This action satisfies the **numerosity** requirement of Fed. R. Civ. Pro. 23 (a) in that the defendant's conduct has affected thousands of individuals across he United States who purchased defendant's contaminated product and fed it to their pets. The number of affected individuals is illustrated by the sheer volume of recalled products, sixty million, the length of time the contaminated products were in the stream of commerce, from December 3, 2006 to March 6, 2007, and the number of retailers who sold the defendant's product.

14. This action satisfies the **commonality** requirement of Fed. R. Civ. Pro. 23 (a) in that the legal and factual issues involved are the same or very similar to all the members of the proposed class. The factual and legal questions affecting the class predominate over any questions affecting only individual members of the Class.

15. This action satisfies the **typicality** requirement of Fed. R. Civ. Pro. 23 (a) in that the proposed class representatives, Barbara Light, Peggy Martin, Janis Crawford, and Vickie Williams, have claims including veterinary bills, medical monitoring, loss of companionship, property damage, property loss and other claims that are typical of all the members of the proposed class. The plaintiffs purchased defendant's products , including Special Kitty, Ol' Roy, and Might Dog Food, from retailers during the dates in which the affected product was sold. The plaintiffs fed Defendant's product to their pets, and subsequently the pets suffered renal failure, as well as other injuries. Plaintiffs' claims are typical of the claims of the

members of the Class, in that they are the owners of a pet who had consumed Defendant's product and subsequently became ill and/or suffered some form of kidney damage and/or failure resulting in injury and/or death.

16. This action satisfies the **adequacy of representation** requirement of Fed. R. Civ. Pro. 23 (a) in that the plaintiffs' interests do not conflict with the interests of the members of the Class they seek to represent. Furthermore, the plaintiffs have retained counsel competent and experienced in the prosecution of complex product, tort, and environmental actions, and they intend to prosecute this action vigorously for the benefit of the Class. The interests of the members of the Class will be fairly and adequately protected by the plaintiffs and their counsel.

17. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of Class Members' claims is impracticable. Even if any Class members could afford individual litigation, the court system could not. Individual litigation further presents a potential for inconsistent or contradictory judgments. Individual litigation increases the delay and expense to all parties and the court system in resolving the issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Notice of the pendency of this class action can be provided to Class members by publication and broadcast.

18. The various claims asserted in this action are certifiable under the provisions of Fed. R. Civ. Pro. 23 (b):

    a. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to

      individual Class members, thus establishing incompatible standards of conduct for the Defendant;

  b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to the class that would, as a practical matter, be dispositive of the interests of the other class members not parties to such adjudications or would substantially impair or impede the ability of such non-party Class members to protect their interests; and

  c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

The allegations of paragraphs 1 through 18 are hereby incorporated by reference and made part hereof as if each such allegation were fully set forth herein, and would further state the individual Plaintiffs, as well as the Class, allege the following causes of actions against the Defendant:

## NEGLIGENCE

19. The Defendant is guilty of negligence, which is the proximate cause of all damages suffered by the Plaintiffs, by failing to use normal and ordinary care in producing pet food that was safe for consumption; failed to test the pet food prior to delivering such product into the stream of commerce to ensure it was safe for consumption; as well as other failures which constitute common law negligence.

20. The Plaintiffs jointly rely upon the doctrine of *res ipsa loquitur* and would show that the Defendant in this cause exercised exclusive control over the production of such pet food,

which were sealed in containers until consumed by Plaintiffs' pets, and that the injuries and damages sustained by the Plaintiffs are of such a nature that they would not ordinarily occur in the absence of negligence.

21. Plaintiffs would state that Defendants are liable under the doctrine of negligent entrustment and/or negligent hiring.

22. The Defendant's conduct was also negligent *per se* for violating Tenn. Code Ann. § 44-17-403, making Defendant liable for up to $5000.00 in non-economic damages to the individual pet owner whose pets have died as a direct and proximate cause of the defendant's negligence.

## BREACH OF EXPRESS WARRANTY

23. Defendants' advertisements and promotional statements alleged above contained broad claims amounting to a warranty that Defendants' products were not harmful.

24. As alleged above, Defendants breached their warranties by offering for sale, and selling as non-harmful, Defendants' products that were in fact harmful.

25. Defendant's breach of their express warranties has caused Plaintiffs to suffer damages in an amount to be proven at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

26. Defendant's impliedly warranted that their pet products were safe and they were manufactured within the acceptable industry standards and sold to Plaintiffs, were merchantable and fit and safe for their ordinary use.

27. Defendant's products purchased and consumed by Plaintiffs were dangerous, harmful, unmerchantable, and unfit for use when sold.  Therefore, Defendant breached the implied warranty of merchantability at the time Defendant's products were sold to Plaintiffs in that

the Defendant's products were not fit for their ordinary purposes.

28. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs are subject to harm by Defendant's products and have suffered damages in an amount to be proven at trial.

29. Plaintiffs have given defendants notice of the breach of the implied warranty of merchantability.

## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

30. Defendants impliedly warranted that their products, which they designed, manufactured, and sold to Plaintiffs and members of the Class, were fit for the particular purpose for which they were intended.

31. Defendants had reason to know the particular purpose for which their products were required. Plaintiffs knew the particular purposes for which they intended to use Defendant's products. Defendant knew that Plaintiffs were relying on Defendant's' skill or judgment to furnish suitable products. The defendants' products were not fit for the particular purpose for which they were required even when properly used, posed a serious danger to pets. The unfitness of the product was a proximate cause of damages to the Plaintiffs, and Defendant would reasonably have expected Plaintiffs' pets to consume the product.

32. As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiffs are entitled to actual and punitive damages.

33. Plaintiffs have given defendants notice of the violation of the implied warranty of fitness for a particular purpose.

## TENNESSEE PRODUCTS LIABILITY ACT 29-28-101

34. Defendant is liable pursuant to Tenn. Code Ann. § 29-28-105, and Restatement of Torts,

Second ' 402A (1), for manufacturing, selling and otherwise distributing a product which is in a defective condition and unreasonably dangerous, and therefore are strictly liable for the injuries to plaintiff.

35. A seller and/or manufacturer who sells any product in a defective condition unreasonably dangerous to the user or consumer or his property is subject to liability to the user or consumer for physical harm or harm to property.

36. In the present case Defendant's pet products reached the Plaintiffs without substantial change in their condition as manufactured, manipulated and sold by the defendants. The Plaintiffs used the product in the manner in which the products were intended to be used..

37. The Plaintiffs were not aware of, and reasonably could not have discovered, the harmful nature of Defendant's products they purchased, because the products were marketed and sold without adequate warnings of their dangers.

38. As a direct and proximate result of the fault of the Defendant, the Plaintiffs have suffered damages.

## TENNESSEE CONSUMER PROTECTION ACT

39. Defendant is liable pursuant to Tenn. Code Ann. § 47-18-101 *et. seq.*, for representing that its products had approval, characteristics, ingredients, uses, benefits and/or quantities that it does not have.

40. Likewise, the Defendant is liable for representing that its products were of a particular standard, quality and/or grade, or that its products were of a particular style or model, when, in fact, the defendant's products were of another.

41. In the present case, the Defendant represented that its pet food products were safe and healthy for consumption by consumers' pets. The Defendant also represented, implicitly or

explicitly, that its pet food products were consistent with the industry standard when they were not.

## PERSONAL INJURY AND PROPERTY DAMAGE

42. The acts and/or omissions set forth above render Defendant liable under theories of outrageous conduct, intentional infliction of emotional distress, negligent infliction of emotional distress and intentional and/or negligent misrepresentation, inconvenience, fear, humiliation, severe mental anguish and property damage. It is believed that the Plaintiffs are entitled to reasonable and necessary medical monitoring for the on-set of diseases that may be suffered by Plaintiffs' pets, and to request to be reimbursed for any and all veterinary bills caused by Defendant's product.

## PUNITIVE DAMAGES

43. Due to the presence of aminopterin found in Defendant's product, which is a chemical commonly used as rat poison, the plaintiffs would show that the Defendant has engaged in conduct demonstrating willful and wanton negligent conduct and a reckless disregard for the safety of animals. Such actions were done intentionally, fraudulently, maliciously, or recklessly and therefore defendants are liable to Plaintiffs for punitive damages

**WHEREFORE**, the Plaintiffs' sue individually and as a class in the amount of TWENTY-FIVE MILLION DOLLARS ($25,000,000.00).

## ADDITIONAL PRAYERS FOR RELIEF INCLUDE

1. That the Court certify Plaintiffs' action as a Class Action on behalf of all others similarly situated, appoint Plaintiffs' counsel as counsel for the class, and order that Notice be given to the Class of this action.

2. Discretionary and incidental costs;

3. Punitive damages to be assessed; and

4. Any general relief not herein specified.

5. The Plaintiffs demand that a jury try this cause.

RESPECTFULLY SUBMITTED this 28th day of March, 2007.

                By:    s/ Dan C. Stanley, BPR# 021002
                          Dan C. Stanley, #021002
                          Attorney for Plaintiffs

                          s/ Robert R. Kurtz, BPR# 020832
                          Robert R. Kurtz, #020832
                          Attorney for Plaintiffs

STANLEY & KURTZ, PLLC
422 Gay Street, 3rd Floor
Knoxville, TN  37902
Phone: (865) 522-9942
Fax: (865) 522-9945